## WIDDER et al. v. SEIFF.

### No. 154.

Circuit Court of Appeals, Second Circuit.

Jan. 10, 1938.

Samuel S. Allan, of New York City, for appellant.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges. .

PER CURIAM.

This is an appeal from an order in bankruptcy, denying the bankrupt's discharge under section 14b (3) of the Bankruptcy Act, as amended, 11 U.S.C.A. § 32 (b) (3) on the ground that he had twice obtained money and property by the use of substantially the same false financial statement in writing. The objecting creditors had filed a number of objections to the discharge, but the referee, sitting as special master, found against them upon all but the two mentioned. The judge confirmed the report, and the bankrupt appealed. The facts are as follows: Seiff, the bankrupt, had owned a business as resident buyer for out of town firms, which in the spring of 1928 he sold to the objecting creditors, a firm made up of John, Jacob and Adolf Widder. Apparently the Widders soon repented of the bargain, for in June they began to negotiate with Seiff to take back the business, as eventually he did in August. Part of the purchase price was in two unsecured notes of $5,000 each, and in order to procure their acceptance by the Widders Seiff presented them with a written statement of his financial condition as of April 1, 1928. This was false in that it represented him as the owner of several parcels of real estate of the aggregate value of about $128,000, subject to aggregate mortgages of about $70,000, when in fact he did not own them, but they were in the name of two corporations of which he and his wife owned all the shares, in proportions which do not appear. Not only Seiff, but his lawyer, Goddard, took part in the negotiations; and Goddard testified that he had told the three Widders and Samuel Widder, their brother, an attorney, that the realty was not owned by Seiff individually, but by the corporations controlled by him and his wife. The objecting creditors called Jacob Widder, who said that he was present at the interview at which the statement and the notes were finally delivered, and at that time nothing was said about the ownership of the real estate; he also denied that Goddard had at any other time spoken to him about the matter. None of the other Widders took the stand, nor did Seiff corroborate Goddard's testimony that the Widders had been informed of the truth about the real property. The second specification concerned the use of substantially the same statement to procure a series of loans from the Industrial National Bank during July and August, 1928. The bank official who authorized these was one Tuchman, whom neither party called; but Goddard testified that he had several times told Tuchman that the realty was held by corporations, and Franzblau, Seiff's accountant, swore that he had prepared the statement with the advice and help of Tuchman, though he was not present when Tuchman first required it as a condition of the loan. The objecting creditors called one Landsman, a minor official of the bank, who said that he was present at that interview and that then at any rate nothing was said about the realty. Again Seiff did not testify that Tuchman had been told the facts.

The defence was that since both the Widders and the bank knew the truth, they could not have relied upon the false statement. Upon that issue Seiff had the burden of proof under the proviso to section 14b, for the transactions gave reasonable ground for supposing that the objection had been proved; and he also had against him the finding of the master who saw the witnesses, and the most suspicious circumstance that, although there was a blank for the purpose in the form which Franzblau used for the statement, he did not correctly state the condition of the title. This makes a combination which must prevail, at least as to the Widder transaction. It is true that none of the Widders but Jacob denied knowledge of the facts which Goddard said he told several of them, which ones he could not remember. But he did contradict Goddard as to himself, and Goddard's testimony was very hazy and uncertain in any event. Why Seiff did not support Goddard does not appear; he was unpersuasive at best, and perhaps it was realized that he would add very little. At any rate we are not prepared to say that he has sustained the burden of proof against the master's finding. Possibly the same is not true as to the bank transaction, where Franzblau corroborated Goddard, and where Tuchman was not called; 'we need not say, for one specification is enough.

Order affirmed.